IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                             No. CR 13-4066 JB/KBM

JORDEN MEDINA,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Jorden Medina's Sentencing Memorandum with Objections to the Presentence Report or in the Alternative Request for a Downward Departure and Variance, filed November 11, 2014 (Doc. 40)("Memo."). The Court held a sentencing hearing on December 4, 2014. The primary issues are: (i) whether the Court should calculate Medina's sentencing range using a base offense level of 12 under U.S.S.G. § 2A1.4(a)(1) for "criminally negligent" conduct or a base offense level of 18 under § 2A1.4(a)(2)(A) for "reckless" conduct; and (ii) whether the Court should depart from the advised guideline sentence under § 5K2.10 for the victim Nicholas Concha's conduct. Because the Court finds, by a preponderance of the evidence, that Medina's conduct on November 30, 2013, in committing involuntary manslaughter was "criminally negligent" rather than "reckless," the Court will calculate Medina's sentencing range using a base offense level of 12 under U.S.S.G. § 2A1.4(a)(1). Moreover, had Medina not withdrawn his request for a downward

departure under § 5K2.10 after the Court sustained his objection to using a base offense level of 18 under § 2A1.4(a)(2)(A), the Court would have granted it.[1]

## PROCEDURAL BACKGROUND

The United States Probation Office ("USPO") disclosed an amended Presentence Investigation Report ("PSR") for Medina on November 13, 2014.  In the PSR, the USPO calculated Medina's base offense level to be 18 under § 2A1.4(a)(2)(A), recommended a 2-level downward departure for acceptance of responsibility under § 3E1.1(a), and a 1-level downward departure for timely notifying Plaintiff United States of America of his intention to enter a guilty plea under § 3E1.1(b).  See PSR at 8.  This resulted in a total offense level of 15.  See PSR at 8.  Accordingly, the PSR recommended a guideline imprisonment range of 18 to 24 months for Count 1, involuntary manslaughter.  See PSR at 14.

The following day, Nov. 14, 2014, Medina filed the Memo.  See Memo. at 1.  In the Memo., Medina objects to the PSR's use of a base offense level of 18 under § 2A1.4(a)(1).  See Memo. at 1.  Medina argues that § 2A1.4(a)(1) should apply, because his conduct of acting -- albeit mistakenly -- in self-defense was criminally negligent rather than reckless.  See Memo. ¶¶ 34-43, at 11-15.  In support of his contention, Medina cites the Tenth Circuit Jury Instructions on Involuntary Manslaughter, which state that a "defendant may commit involuntary manslaughter if he acts in self-defense but is criminally negligent in doing so."  Memo. ¶ 35, at 11 (quoting Instruction 2.54.1, Tenth Circuit Jury Instructions)(internal quotation marks omitted).

---

[1]The Court notes that, because Medina's sentence under a base offense level of 12 ended up being close to a time-served sentence, the downward departure under § 5K2.10 would have led to Medina being released only a day or two earlier than he would have been otherwise.  From the Court's view, given the case's sensitive nature, Medina chose not to pursue the downward departure out of respect for the victim's family.

In the alternative, Medina requests a downward departure under §5K2.10. See Memo. ¶¶ 44-52, at 15-18. According to Medina, "a downward departure is warranted when the victim's wrongful conduct contributed significantly to provoking the offense behavior." Memo ¶ 45, at 15 (internal quotation marks omitted). Medina argues that "[t]here is no doubt in this case that Mr. Concha's conduct was the sole cause in provoking the offense behavior." Memo. ¶ 45, at 10. Medina contends that, therefore, a downward departure under § 5K2.10 is appropriate. See Memo. ¶¶ 45-52, at 15-18.

The United States filed its Sentencing Memorandum on November 25, 2014. See Doc. 41 ("United States' Memo."). The United States focuses solely on Medina's objection to the PSR's use of a base offense level of 18 under § 2A1.4(1)(2)(B). See United States' Memo. *passim*. The United States points out that Application Note 1 to § 2A1.4 defines "reckless" as

> a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation. The term thus includes all, or nearly all, convictions for involuntary manslaughter under 18 U.S.C. § 1112.

United States' Memo ¶ 8, at 3 (quoting U.S.S.G. §2A1.4, n.1)(internal quotation marks omitted). The United States argues that the following facts indicate Medina was reckless: (i) Medina shot Concha from a distance "not immediate close" to Medina -- i.e., thirty feet away; (ii) before shooting Concha, Medina had time to go to his truck's console, retrieve his handgun, chamber a round in the handgun, move to a position from which he could observe Concha's location and then fire at him; (iii) Medina's failure to fire a warning shot; (iv) that Medina fired the shot "in the dark of night, at a commercially busy convenience store-gasoline station from the area of the gasoline pump islands on a Saturday evening during the Thanksgiving holiday . . . ." United States' Memo. ¶¶ 7-8, 3-4.

The United States also analogizes Medina's case to United States v. Brown, 314 F.3d 1216 (10th Cir. 2003), in which the United States Court of Appeals for the Tenth Circuit, in an opinion that the Honorable Paul J. Kelly, United States Circuit Judge for the Tenth Circuit, authored, and Judges Ebel and Baldock joined, held that the defendant's conduct met § 2A1.4's definition of "reckless" where he placed a firearm in a water-turn-off hole, and was observed making this placement at an apartment complex with many bystanders while school children -- who observed the firearm's placement -- were getting off the bus. See United States' Memo. at 4 (citations omitted). According to Medina, Judge Kelly found that the defendant's conduct was reckless "for the danger that it presented to the children [and] the risk that the children might shoot themselves or others with it." United States' Memo. at 4.

On December 2, 2014, the USPO disclosed an Addendum to the PSR ("Addendum"). In the Addendum, the USPO responds to both of Medina's arguments as follows:

> In this case, as noted in Paragraph 9, the Offense Conduct section of the presentence report, while the defendant claims he was not sure what was going to happen to him, he also expressed anger by stating he got "pissed" and got off the ground and said "you mother . . ." He also had the thought process to get off the ground, get into the console of his vehicle, pull his weapon, chamber a round, and shoot at the victim. Then he chose to drive away. Another important fact to point out is that the victim was found 30 feet from where the defendant fired his weapon. The Probation Office believes the defendant's conduct in this case shows less culpability than intention, but more culpability than criminal negligence.
>
> . . . .
>
> The defendant asks the Court to consider a departure pursuant to USSG § 5K2.10, Victim's Conduct. The Probation Office reviewed USSG § 5K2.10 prior to submitting the presentence report to all parties; however, did not and still does not believe a downward departure is applicable pursuant to this policy statement for the following reasons. First, no one disputes the victim provoked the incident that occurred on November 30, 2013, but as noted above, the victim was found 30 feet from the defendant at the time he fired a round from his weapon. The victim was not standing over the defendant, he did not continue to fight with the defendant, and the investigation did not reveal the victim had any

>weapons on his possession.  As such, the Probation Office believes the level of force used by the victim.  Therefore, the Probation Office does not believe a downward departure pursuant to USSG § 5K2.10 is warranted.

Addendum at 1-2.

That same day, Medina responded to the United States' Memo. and the Addendum.  See Response to Government's Sentencing Memorandum, filed Dec. 2, 2014 (Doc. 42)("Response").  In the response, Medina largely reiterates his arguments from the Memo -- namely, that the Tenth Circuit Jury Instruction for Involuntary Manslaughter indicates that his conduct was negligent, and not reckless.  See Response *passim*.  Medina challenges the Addendum's assert that he had the thought process to collect himself and shoot Concha.  See Response ¶ 7, at 4.  According to Medina, this assertion is inconsistent with both the facts of the cases "as well as human nature."  See Response ¶ 7, at 4.  According to Medina, upon being attacked "for no reason," his body "secreted hormones and adrenaline and . . . went into a state of hypervigilance."  Response ¶ 7, at 4.  Medina also challenges the United States' assertion that the gas station was populated by many people at the time of the incident.  See Response ¶ 10, at 5.  According to Medina, "[t]his is a complete fiction and is totally unsupported by the facts of the case."  Response ¶ 10, at 5.  Medina concludes his argument by stating:

>In the final analysis, Mr. Medina fired one shot at a man who had attacked him for no reason, was retrieving something from his pockets and was perpendicular to him as if he was circling back around.  It also appeared to Mr. Medina, that Mr. Concha's friend, Mr. Winters, was also joining the fight.  While Mr. Medina was criminal[ly] negligent in his actions, he was not reckless.

Response ¶ 11, at 6.

## ANALYSIS

I. **THE COURT WILL CALCULATE MEDINA'S SENTENCING-GUIDELINES RANGE USING A BASE-OFFENSE LEVEL OF 12 UNDER § 2A1.2(a)(1).**

The Court will sustain Medina's objection to the PSR's use of a base offense level of 18 under § 2A1.4(a)(2)(A) for reckless conduct, and instead use a base-offense level of 12 under § 2A1.4(a)(1) for criminally negligent conduct.  In pertinent part, Application Note 1 to § 2A1.4 defines "reckless" as

> a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.  The term thus includes all, or nearly all, convictions for involuntary manslaughter under 18 U.S.C. § 1112.

U.S.S.G. § 2A1.4, n. 1.  Application Note 1, in turn, defines "criminally negligent," as: "Conduct that involves a gross deviation from the standard of care that a reasonable person would exercise under the circumstances, but which is not reckless."  U.S.S.G. § 2A1.4, n. 1.

Medina argues that the Tenth Circuit's Jury Instructions for involuntary manslaughter dictate that his conduct was criminally negligent rather than reckless.  The Court disagrees.  Neither Tenth Circuit precedent nor the Sentencing Guidelines indicate that sentencing provisions should be interpreted based on jury instructions.  Indeed, that the Sentencing Commission included specific definitions for "reckless" and "criminally negligent" in Application Note 1 to § 2A1.4, and did not mention that courts should look to jury instructions for guidance, strongly suggests that looking to Tenth Circuit jury instructions would be inappropriate to define those terms.  As Medina has not cited -- and the Court has been unable to find -- a case in which a court has looked to Tenth Circuit jury instructions to define either "reckless" or "criminally negligent" under § 2A1.4, the Court will not do so here.

Applying the definitions in Application Note 1, however, the Court concludes that Medina's conduct on November 30, 2013, is closer to "criminal negligence" than "recklessness." Although the case law applying § 2A1.4 is sparse, a few cases are instructive.  In <u>United States v. Hamilton</u>, No. 95-3249, 81 F.3d 173 (10th Cir. 1996)(unpublished)[2], in an unpublished opinion that the Honorable John C. Porfilio, United States Circuit Judge for the Tenth Circuit, wrote, and Judges Anderson and Henry joined, the Tenth Circuit found the following facts indicated the defendant -- Debra Jo Hamilton -- was reckless under § 2A1.4:

> Hamilton and her husband . . . were hosting a barbecue at their home on the Fort Riley Military Reservation in Kansas. Following an argument between the couple, defendant decided that she was going to leave in the couple's truck, which was parked in their driveway. Mr. Hamilton preferred that she stay. After defendant got in the truck and locked the doors, Mr. Hamilton climbed onto the hood in an effort to prevent defendant from leaving. Defendant backed out of the driveway and drove through the residential section of Fort Riley at speeds of at least thirty to thirty-five miles an hour with her husband still on the hood of the truck. Defendant claims that she was driving to a military police station. Witnesses said that the vehicle ran stop signs and that they heard tires squealing and Mr. Hamilton screaming. After driving a little over three miles, defendant applied the brakes, causing Mr. Hamilton to fall off the hood. Defendant stated that when she saw her husband attempt to get up, she drove away, proceeding to a telephone to call her daughter and then to her daughter's home outside Fort Riley. Her husband died from the injuries suffered from his fall from the vehicle.

No. 95-3249, at *1.

---

[2]<u>United States v. Hamilton</u> is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  <u>See</u> 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin,</u> 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that <u>United States v. Hamilton</u> has persuasive value with respect to material issues and will assist the Court in its preparation of this Sealed Memorandum Opinion.

In United States v. Luna, 21 F. 3d 874 (9th Cir. 1994), in an opinion that the Honorable William A. Fletcher, United States Circuit Judge for the Ninth Circuit, authored, and Chief Judge Kozinski and Judge Trott joined, the Ninth Circuit applied § 2A1.4's definition of "recklessness" to determine whether to apply an upward adjustment under § 3C1.2 for conduct that "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." Judge Fletcher found the following conduct reckless:

> The defendant's car ran three stop signs; [when an officer tried to pull him over, the defendant stopped] in the middle of the road; that as [the officer] walked toward the car, the [defendant] reached down toward the floorboards (where a gun was later found), and that the officer, fearing for his safety, retreated; that after [the officer] got back into his car, the [defendant's] car accelerated and he chased it a short distance, after which the [defendant] jumped out of the car and ran.

21 F.3d at 885.

In United States v. O'Brien, 238 F.3d 822 (7th Cir. 2001), in an opinion that the Honorable William J. Bauer, United States Circuit Judge for the Seventh Circuit, authored, and Judges Ripple and Posner joined, the Seventh Circuit found the defendant was reckless under § 2A1.4 where he passed an individual in the no-passing lane while driving uphill. Judge Bauer reasoned:

> The act of passing in the lane for oncoming traffic while at or near the crest of a hill, where it is impossible to know whether another car is approaching in the same lane, strikes us as the very height of recklessness. It is difficult to imagine how such a near-suicidal maneuver could be characterized as anything other than a reckless and gross deviation from any reasonable standard of care. . . . Moreover, as an experienced driver, O'Brien cannot reasonably claim that he was unaware of the serious risks involved in executing such a maneuver.

238 F.3d at 826.

Finally, in United States v. Livoti, 22 F. Supp. 2d 235 (S.D.N.Y. 1998), the Honorable Shira A. Scheindlin, United States District Judge for the Southern District of New York, found

that a police officer's conduct met § 2A.1.4's reckless standard when, while attempting to subdue a suspect, the officer choked the suspect to death using a sleeperhold.  See 22 F. Supp. 2d at 246.  Judge Scheindlin reasoned that, because the officer had been trained on the risks of using a sleeperhold and there was no indication that the suspect was trying to attack him when he used the sleeperhold, his conduct was reckless.  22 F. Supp. 2d at 246.

The plain language of Application Note 1 to § 2A1.4 and the holdings of these cases indicate that two prongs distinguish "reckless" conduct from "criminally negligent" conduct: (i) the defendant has some awareness of the risks created by his conduct; and (ii) the risks were so extreme that disregarding them was a gross deviation from the standard of care that a reasonable person would use in such a situation.  In this case, the risks were not so extreme that disregarding them was a gross deviation from the standard of care that a reasonable person would have used in Medina's situation.  The PSR states:

> Medina recalled Concha "slid into me" and he thought "this guy is trying to knock me out."  He stated he went down and at that point thought Concha was going to jump up on top of him.  Medina said he got up as fast as he could.  He got in his truck and could see Concha was doing something.  He did not know if Concha was going to pull a weapon so he pulled his Ruger .40 caliber semiautomatic pistol from the center console.  At that time Winters got out of the truck on the passenger's side and came running up to him.  Medina thought Winters was going to keep coming at him.  Medina stated, "It just happened so fast . . . ."

PSR at 4.  Unlike the defendants' conduct in the cases above, Medina's conduct does not demonstrate that he created any extreme risks necessary to demonstrate that he acted recklessly.  It may have been reckless for Medina to empty his clip when he thought Concha was approaching him.  It may have been reckless for Medina to fire a fully automatic weapon in such a situation.  It may have been reckless for Medina to fire his weapon in a crowded area -- like a mall or a busy parking lot.  No such facts are present here.  Despite the United States'

contentions, there is no indication in the PSR that the gas station was "commercially busy." Perhaps most importantly, rather than emptying his clip, Medina fired a single shot.

Medina was not sure what was going to happen to him. The USPO points to the fact that Medina expressed anger by stating he got "pissed," got off the ground, and said "you mother . . . ." These facts do not convert the same facts from negligence to recklessness. They are the natural reactions of a male whom another male sucker-punched. That reaction is probably not negligent, much less reckless, but a predictable and natural reaction. The USPO also said that he had the thought process to get off the ground, get into the truck, pull his weapon, and shoot at the victim. All of these actions happened within seconds, however. These facts are also more consistent with negligent self-defense than recklessness. The USPO also says that another important fact indicating recklessness is that the victim was thirty feet from where Medina fired his weapon. The Court played football, so it converts distances to yards. Thirty feet seems further away than ten yards; in the Court's view, ten yards is not far away. Also, it is unclear what Concha was doing when he was shot -- whether he was moving towards Medina, towards his car, or towards the gas station.

If the Court looks at Medina's actions alone -- without considering his belief that he had to act in self-defense -- the court could find them reckless. It is certainly reckless to shoot a firearm at another individual without reason. However, looking at Medina's belief that he had to act in self-defense -- that belief was negligent rather than reckless. Moreover, Medina's response to that belief -- firing a single shot to protect himself -- was negligent rather than reckless. The Court has been unable to find a case addressing this issue, but the Court sees no reason why it would not consider Medina's actions in light of his reasonable -- but mistaken -- belief that he was acting in self-defense. Although the results of Medina's actions are tragic, the Court cannot

conclude that they presented such extreme risks that disregarding them constituted a gross deviation from the standard of care that a reasonable person would use in such a situation.

At the hearing, the United States pointed to the statement in Application Note 1 that recklessness under § 2A1.4(a)(2)(A) "includes all, or nearly all, convictions for involuntary manslaughter under 18 U.S.C. § 1112." At first blush, this sentence may indicate that the Court can only apply the recklessness standard to involuntary manslaughter cases. Section 2A1.4 governs only involuntary manslaughter cases, however. If the Sentencing Commission did not intend for courts to apply the base offense level of 12 to cases like this -- where the Defendant's conduct is criminally negligent even when analyzed under a preponderance standard -- such a provision would be meaningless. Accordingly, the Court concludes that Medina acted negligently and the sustains Medina's objection to the PSR's use of a base offense level of 18 under § 2A1.4(a)(2)(A) and will instead use a base offense level of 12 under § 2A1.4(a)(1).

## II.     THE COURT WOULD HAVE GRANTED MEDINA'S REQUEST FOR A DOWNWARD DEPARTURE IF HE HAD PRESERVED IT.

Although Medina withdrew his request for a downward departure after the Court sustained his objection to using a base offense level of 18 under § 2A1.4(a)(2)(A), the Court likely would have granted it. "Victim misconduct is an encouraged basis for departure under § 5K2.10." Koon v. United States, 518 U.S. 81, 83 (1996). U.S.S.G. § 5K2.10 provides: "If the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense."

In deciding whether a sentence reduction is warranted, and the extent of such reduction, the court should consider the following:

> (1)    The size and strength of the victim, or other relevant physical characteristics, in comparison with those of the defendant.
>
> (2)    The persistence of the victim's conduct and any efforts by the defendant to prevent confrontation.
>
> (3)    The danger reasonably perceived by the defendant, including the victim's reputation for violence.
>
> (4)    The danger actually presented to the defendant by the victim.
>
> (5)    Any other relevant conduct by the victim that substantially contributed to the danger presented.
>
> (6)    The proportionality and reasonableness of the defendant's response to the victim's provocation

United States v. Trujillo, No. CR 08-2575 JB, 2010 WL 5476756, at *3 (D.N.M. Dec. 1, 2010)(Browning, J.).

On balance, the Court concludes that these factors weigh in favor of departing downward. The record does not reveal any information about the size and strength of the victim, or otherwise indicate that the first factor is particularly important here. The second factor -- the persistence of the victim's conduct and any efforts by the defendant to prevent confrontations -- is neutral. Although Medina could have fled by getting into his car and driving away, Concha could have done the same. Even if Concha did not approach Medina, he stayed in the same vicinity after punching Medina to the ground and after Medina retreated to his truck. Thus, this factor is neutral. The third factor -- the danger that the defendant reasonably perceived, including the victim's reputation for violence -- supports departing downward. The Court does not have any indication of the victim's reputation for violence, but the Court believes that Medina reasonably perceived himself to be in danger based on Concha's conduct.

The fourth factor -- the danger that the victim actually presented to the defendant by the victim -- also weighs towards applying a downward departure. Concha had already hit Medina

and knocked him to the ground -- without any indication as to why.  Although Concha did not have a weapon, Medina believed that Concha was coming towards him -- perhaps to attack him again.  The fifth factor -- any other relevant conduct of the victim that substantially contributed to the danger presented -- is neutral.  None of Concha's other conduct substantially contributed to the danger presented.  The sixth and final factor -- the proportionality and reasonableness of the defendant's response to the victims' provocation -- cuts against departing downward, because shooting Concha was an excessive response to his behavior.  In sum, the Court concludes that the balance of the factors suggest that there was provocation in this case warranting a downward departure.  And while victim misconduct is not sufficient to warrant application in certain situations -- such as cases of criminal sexual abuse -- the Court believes that victim misconduct is an appropriate basis for a downward departure in a case of assault and manslaughter.

This case is factually similar to cases where the Tenth Circuit and the Supreme Court have found that district courts acted within their discretion in departing downward under § 5K2.10.  In United States v. Tsosie, 14 F.3d 1438 (10th Cir. 1994), overruled on other grounds by United States v. Benally, 215 F.3d 1068, 1074 (10th Cir. 2000), the Tenth Circuit upheld a downward departure based on the following circumstances:

> At approximately 3:30 p.m., on his way back to his home, [Tsosie] saw his wife's van on the highway.  Tsosie tried to flag the van down, but it sped off.  Tsosie then turned his truck around and set out to catch his wife's van.  His wife eventually stopped her van and pulled it off on the side of the road.  Tsosie stopped his truck in front of the van.  He saw, sitting in the passenger side of the van, Stephen Arnold, a man [his wife,] Marjorie Fowler[,] had been having an affair with for a long time.  Tsosie had believed his wife was no longer seeing Arnold.
>
> Arnold exited the van, and Arnold and Tsosie began to fight. Arnold broke away and ran approximately 600 yards along the roadside with Tsosie following him in his truck.  Tsosie exited his truck, grabbed a survival type knife with a six inch blade and followed Arnold on foot as he climbed over a fence and crossed approximately 300 yards into an open field.  Arnold stopped and began swinging

> his belt at Tsosie, striking him on the nose.  Tsosie swung his knife several times at Arnold, causing a few superficial wounds, and then, when Arnold raised his leg, Tsosie struck him behind his left knee.  Tsosie and Arnold continued to roll on the ground exchanging punches.  Tsosie finally pushed Arnold from him and noticed Arnold was bleeding from his leg.
>
> Tsosie drove to a nearby trading post and told the cashier to call the police and an ambulance.  Upon his return to Arnold, he placed a towel inside Arnold's pants, attempting to stop the bleeding.  When the ambulance arrived, 47 minutes later, Arnold was dead.

14 F.3d at 1440.  The Tenth Circuit held that the district court was justified and reasonable when it departed downward from a guideline range of 41 to 51 months to a sentence of 4 months to be served in a half-way house, in part, because, under § 5K2.10, Arnold provoked Tsosie:

> We find that Arnold's conduct contributed significantly to provoking Tsosie's offense behavior.  Arnold's conduct consisted not merely of having an affair with Tsosie's wife but also of being in a vehicle with Tsosie's wife the day after she took her children away and gave a false excuse about her whereabouts.  Tsosie, who believed the affair with Arnold was over, was surprised and angered.  Further, in the ensuing fight, Arnold took off his belt and hit Tsosie on the nose with it and actively participated in the affray during which his leg was stabbed.

14 F.3d at 1442.  See Koon v. United States, 518 U.S. at 101 (finding a district court acted within its discretion in departing downward 5 levels under § 5K2.10 where the defendants attacked a victim who "posed no objective threat, and the defendants had no reasonable perception of danger," because "the incident would not have escalated to this point, indeed it would not have occurred at all, but for Mr. King's initial misconduct"); United States v. LaVallee, 439 F.3d at 708 (finding no abuse of discretion where a district court departed downward because the victim "made sexually explicit remarks to a female officer, threatened [the defendant] immediately before the assault, and made an aggressive move toward him").  Cf. United States v. Jones, No. CR 07-0297 JB, 2008 WL 2323512 (D.N.M. Jan. 29, 2008)(Browning, J.)(rejecting a request for a downward departure where a defendant took drastic measures -- using a machete to hack through a door -- to pursue a victim, who earlier punched the defendant, after the victim

retreated).  The Court concludes that the cases in which the Tenth Circuit and the Supreme Court have dealt with downward departures under § 5K2.10 weigh in favor of granting Medina's request for a downward departure.  Consequently, had Medina preserved his request after the Court sustained his objection to using a base offense level of 18 under U.S.S.G. § 2A1.4(a)(2)(A), the Court would have granted it.

**IT IS ORDERED** that Defendant Jorden Medina's objection to using a base offense level of 18 under U.S.S.G. § 2A1.4(a)(2)(A) in the Sentencing Memorandum with Objections to the Presentence Report or in the Alternative Request for a Downward Departure and Variance, filed November 11, 2014 (Doc. 40), is sustained.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Paul H. Spiers
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Stephen P. McCue
  Federal Public Defender
John Van Butcher
  Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

    *Attorneys for the Defendant*